**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-01026-JLK

LAWRENCE RAYMOND DEROSIER,

Plaintiff,

v.

OFFICER KENNETH BALLTRIP, in his individual capacity,
COMMANDER AARON SANCHEZ, in his individual and official capacity, and
TOWN OF JOHNSTOWN, a government municipality,

Defendants.

---

**MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS**

---

**Kane, J.**

## Introduction

Exasperated with the Greeley Tribune's repeated littering of his yard despite his numerous complaints, Plaintiff Lawrence Derosier called the paper and suggested that he would "take a shot at" the next delivery person to visit his property. The next day, the Johnstown police arrested Plaintiff at his home for the crimes of menacing and telephone harassment. The charges were subsequently dropped, and Plaintiff now brings five 42 U.S.C. § 1983 claims for violation of the First and Fourth Amendment against the arresting officer, that officer's supervisor, and the Town of Johnston. The Defendants have moved to dismiss all of Plaintiff's claims on the grounds that they are barred by the doctrine of qualified immunity. For the reasons that follow, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## Background

Plaintiff, a resident of Johnstown, alleges that the Greely Tribune repeatedly placed an advertising circular called "The TribExtra" onto his yard.  Doc. 12[1] at ¶ 15.  Because the TribExtra would not always be secured by a rubber band, the pages littered Plaintiff's yard.  *Id.*  Over the course of two years, Plaintiff called the Greely Tribune multiple times and asked that they stop dumping the TribExtra on his property, but the deliveries continued.  *Id.* at ¶¶ 16-17.

On July 16, 2013, Plaintiff called the Greely Tribune and spoke with employee Brooke Brown.  He again asked that the deliveries of the TribExtra be stopped and stated in pertinent part that "I want this to stop and I want an explanation for why it hasn't stopped . . . I've had it. The next guy who comes and throws that TribExtra onto my property, I'm going to take a shot at."  *Id.* at ¶ 19.  Brown asked if Plaintiff was "threatening her driver," and Plaintiff responded "[n]o, but I am telling you that this needs to stop."  *Id.* at ¶ 20.  Brown contacted the Johnstown Police Department and spoke with Defendant Kenneth Balltrip.  *Id.* at ¶ 21.  After speaking with Ms. Brown, Officer Balltrip had a conversation with Commander Sanchez and they agreed that there was probable cause to arrest Plaintiff for menacing and telephone harassment.  *Id.* at ¶ 23. Officer Balltrip and another officer went to Plaintiff's home to arrest him, but he was not there. *Id.* at ¶ 24.

On July 17, 2013, Officer Balltrip called Plaintiff and asked him to come down to the station.  *Id.* at ¶ 25.  Plaintiff declined to do so, and when asked by Officer Balltrip if he had threatened to shoot a courier for the Greely Tribune, Plaintiff said "he had not threatened to shoot anyone and that he did not even own a firearm."  *Id.*  After this phone call and another meeting with Commander Sanchez, Officer Balltrip and Officer Steven Bakovich[2] each took a squad car to Plaintiff's home and entered his property.  *Id.* at ¶¶ 26-28.  The officers banged on

---

[1] After Defendants' motion to dismiss was filed, Plaintiff filed an amended complaint.  Doc. 12.
[2] Officer Bakovich was originally named as defendant in this case, but has since been dismissed by stipulation of the parties.  Doc. 21.

Plaintiff's front door, and Plaintiff opened it "just a crack" but refused to come outside.  *Id*. at ¶¶ 29-30.  Officer Balltrip then displayed his firearm and told Plaintiff "he had no choice," at which point Plaintiff was placed under arrest.  *Id*. at ¶ 30.  Plaintiff was held in Weld County Jail for twelve hours and was released on bond the following day.  *Id*. at ¶ 32.  On July 7, 2014, the Weld County District Attorney dropped the charges and closed the case.  *Id*. at ¶ 34.

On May 14, 2015, Plaintiff filed suit under 42 U.S.C. § 1983, alleging (1) a Fourth Amendment violation for false arrest (an arrest without probable cause) against Officers Balltrip and Commander Sanchez; (2) a First Amendment violation against Officers Balltrip and Commander Sanchez; (3) a Fourth Amendment violation for false arrest (imprisonment) against Officers Balltrip and Commander Sanchez; (4) a First and Fourth Amendment violation for unconstitutional custom or practice against Commander Sanchez and the Town of Johnstown; and (5) a First and Fourth Amendment violation for failure to train or supervise against Commander Sanchez and the Town of Johnstown.  Doc. 12 at ¶¶ 36-87.  Defendants have moved to dismiss all five claims on the grounds that  they are barred by the doctrine of qualified immunity.  Doc. 10.

## Legal Standards

42 U.S.C. § 1983 imposes civil liability upon

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .

Qualified immunity is an affirmative defense to a 42 U.S.C. § 1983 action, providing immunity from suit from the outset.  *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001).  Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is

effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Accordingly, if the defense of qualified immunity is asserted, it should be resolved "at the earliest possible stage in litigation." *Id.*

To "survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1122 (D. Colo. 2014) (quoting *Schwartz v. Booker,* 702 F.3d 573, 579 (10th Cir. 2012)).  "In order for a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Quinn v. Young*, 780 F.3d 998, 1005-06 (10th Cir. 2015) (quoting *Wilson v. Montano,* 715 F.3d 847, 852 (10th Cir. 2013) (internal alterations and quotations omitted)).  In addition, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (quoting *Cortez v. McCauley,* 478 F.3d 1108, 1114–15 (10th Cir. 2007)).

## Discussion

A.   <u>Fourth Amendment violation for false arrest (an arrest without probable cause) against Officers Balltrip, and Commander Sanchez</u>

Plaintiff's first claim is that his Fourth Amendment rights were violated when he was arrested on his property without a warrant, and allegedly without probable cause, on July 17, 2013.  *See* Doc. 12 at ¶¶ 37-38.

 "When a warrantless arrest is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to

4

arrest or detain the plaintiff." *Stearns v. Clarkson*, 615 F.3d 1278, 1283 (10th Cir. 2010) (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)). This analysis looks to the totality of the circumstances, and whether a reasonable person would believe that an offense has been committed by the person arrested. *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (quoting *United States v. Martin,* 613 F.3d 1295, 1302 (10th Cir. 2010)).

In Colorado, "[a] person commits the crime of menacing if, by any threat . . . he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." C.R.S. § 18-3-206(1). In determining whether the defendant knowingly placed or attempted to place another person in fear of imminent serious bodily injury, the proper focus is on the intent and conduct of the actor, not of the victim. *People v. Shawn*, 107 P.3d 1033, 1035 (Colo. App. 2004). The prosecution need only prove the defendant was aware that his or her conduct was practically certain to cause fear. *Id.; see People v. Saltray*, 969 P.2d 729, 731 (Colo. App. 1998). "A person commits harassment if, with intent to harass, annoy, or alarm another person, he or she . . . initiates communication with a person or directs language toward another person . . . by telephone . . . intended to harass or threaten bodily injury." C.R.S. § 18-9-111(1). "The gravamen of the offense is the thrusting of an offensive and unwanted communication on one who is unable to ignore it." *People v. Weeks*, 591 P.2d 91, 96 (Colo. 1979); *see People v. McBurney*, 750 P.2d 916, 917 (Colo. 1988) ("In order to be found guilty under the present telephone harassment statute, the prosecution must show that the defendant had the specific intent to 'harass, annoy, or alarm' another while committing the offense of initiating a telephone

communication 'in a manner intended to harass or threaten bodily injury or property damage,' or makes an obscene telephone 'comment, request, suggestion or proposal.'").

In deciding this motion, I "must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Thus viewed, the facts are these: immediately after making the alleged threat to Ms. Brown to "take a shot at" the next delivery person who threw the TribExtra onto his property, Doc. 12 at ¶ 19, Ms. Brown asked "Are you threatening my driver?" and Plaintiff replied "No, but I am telling you that this needs to stop," *id*. at ¶ 20. Ms. Brown immediately called the Johnstown Police Department and told them she was "not scared" but was "alarmed and concerned for the delivery driver." *Id*. at ¶ 21. The next day, Officer Balltrip spoke with Plaintiff on the phone, and asked him "if he threatened to shoot the TribExtra courier." *Id*. at ¶ 25. Plaintiff responded that "he had not threatened to shoot anyone with anything and that he did not even own a firearm," and explained that he had made his "take a shot" comment "in jest and to communicate . . . his exasperation" with the Tribune's repeated littering of his property. *Id*. Shortly after this phone conversation, Plaintiff was arrested. *See id*. at ¶¶ 26-30.

With respect to the crime of menacing, and viewing the facts in the light most favorable to the Plaintiff, I cannot agree that Plaintiff's conduct was "practically certain to cause fear." *Shawn*, 107 P.3d at 1035. Immediately after making his "take a shot" comment, the Plaintiff was asked if he was "threatening [the] driver," and he responded "No." Doc. 12 at ¶ 20. Ms. Brown, to whom the comment was made, told the officers that she was "not scared." *Id*. at ¶ 21; *see People v. Gagnon*, 703 P.2d 661, 663 (Colo. App. 1985) ("[W]hat the victim saw or heard, and his reactions thereto, are relevant considerations in determining whether defendant had the requisite intent to place him in fear."). The context of Plaintiff's remarks, the reaction thereto,

and simple logic compel the conclusion that there was no probable cause to arrest Plaintiff for the crime of menacing. *See Brickey v. Weyler*, No. 11-CV-02175-MSK-MEH, 2013 WL 1137132, at \*5 (D. Colo. Mar. 19, 2013) (finding dispute of fact as to whether there was probable cause for menacing arrest based on statement to police officers about a bomb that was "plainly sarcastic").

Similarly, viewing the facts in the light most favorable to the Plaintiff, there was no probable cause to arrest Plaintiff for harassment.  Harassment requires "specific intent to 'harass, annoy, or alarm' another," C.R.S. § 18-9-111, but the facts as alleged show clearly that Plaintiff's intent was to stop the littering of his property by the Greeley Tribune. *See* Doc. 12 at ¶¶ 19-20, 25.  In fact, Plaintiff explained, both to Ms. Brown and to Officer Balltrip, before his arrest, that he did not intend to threaten anyone, that his comment was made "in jest and to communicate . . . his exasperation," and that he did not even own a firearm. *See id*. at ¶ 25; *Brickey*, 2013 WL 1137132 at \*5.

Finally, the law on this issue was "clearly established" at the time of Plaintiff's arrest. *See, e.g.*, *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007) ("The law was and is unambiguous: a government official must have probable cause to arrest an individual."); *Brickey*, 2013 WL 1137132 at \*6 ("[T]he general contours of a person's 4th Amendment right to be free from a warrantless arrest, unsupported by probable cause, is so axiomatic as to require no particular citation.").  Indeed, it has been so for hundreds of years. *See Turbervell v. Savage*, (1669) 86 Eng. Rep. 684 (K.B.).  Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's first claim.

B.   <u>First Amendment violation against Officers Balltrip and Commander Sanchez</u>

Plaintiff's second claim is that his arrest was retaliation against him for exercising his First Amendment rights.  Doc. 12 at ¶¶ 45-49.  Plaintiff must prove "(1) that [he] was engaged in constitutionally protected activity; (2) that defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *Worell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotations omitted).  The parties appear to agree that this claim turns on whether Plaintiff's "take a shot" comment was a "true threat" outside the protection of the First Amendment.  *See* Doc. 10 at 7-8; Doc. 15 at 8-11.

For First Amendment purposes, the Tenth Circuit has defined a "threat" as "a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act."  *Nielander v. Bd. Cty. Comm'rs of Cty. of Republic, Kan.*, 582 F.3d 1155, 1167 (10th Cir. 2009) (quoting *United States v. Viefhaus*, 168 F.3d 392, 395–96 (10th Cir. 1999)).  "It is not necessary to show that defendant intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat.  The question is whether those who hear or read the threat reasonably consider that an actual threat has been made.  It is the making of the threat and not the intention to carry out the threat that violates the law."  *Id.*  "Whether a statement constitutes a 'true threat' is a fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant."  *Id.* at 1167-68 (citing *United States v. Magleby,* 241 F.3d 1306, 1311 (10th Cir. 2001)).  The "threat must be made 'with the intent of placing the victim in fear of bodily harm or death.'  An intent to threaten is

enough; the further intent to carry out the threat is unnecessary." *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005) (quoting *Virginia v. Black*, 538 U.S. 343, 359-360 (2003)).

For much the same reasons given above in connection with the probable cause analysis, I conclude that a reasonable officer would necessarily know that Plaintiff was not making a true threat outside the protection of the First Amendment.  Defendants completely ignore the entire context of Plaintiff's "take a shot" comment and argue in a conclusory fashion that the statement was a "declaration of intention to injure another by the commission of an unlawful act."  Doc. 10 at 8.  But both the Supreme Court and the Tenth Circuit have made clear that in determining whether a statement constitutes a true threat, context is everything.  *See Black*, 538 U.S. at 367 (analysis of whether speech is protected by First Amendment requires considering "contextual factors"); *Nielander*, 582 F.3d at 1167-68.

The factual context of Plaintiff's comment, viewed in the light most favorable to him, is as follows.  Plaintiff called the Tribune in order to make a legitimate request that the paper stop littering his property, and made his "take a shot" comment out of "exasperation."  Doc. 12 at ¶¶ 19, 25.  Immediately after making the comment, Plaintiff clarified to Ms. Brown that he was "not threatening [her] driver."  *Id*. at ¶ 20.  Ms. Brown was "not scared" after the conversation, *id*. at ¶ 21, and Plaintiff later explained directly to Officer Balltrip before his arrest that he "had not threatened to shoot anyone with anything and that he did not even own a firearm."  *Id*. at ¶ 25. Given this context, I cannot agree with Defendants that Ms. Brown or Officer Balltrip "reasonably consider[ed] that an actual threat ha[d] been made," *Nielander*, 582 F.3d at 1167, or that a "reasonable person would find that a threat existed."  *Magleby*, 241 F.3d at 1311.

The Defendants' reliance on *Nielander* itself is misplaced.  In *Nielander*, the plaintiff stated "that he was afraid to attend another Commissioners' meeting for fear that he would bring

a gun along," and that "if the government came to his house to collect his taxes, they would have another Ruby Ridge." *Nielander*, 582 F.3d at 1167.  In analyzing the context of Nielander's statement, the Tenth Circuit considered that the statement as relayed to the officer writing the probable cause determination was that "Nielander said he *would* bring a gun *the next time* he went to a Commissioners' meeting," *id*. at 1169 (emphasis in original), rather than a statement that Nielander would *not* attend another such meeting, *id*. at 1167, that Mr. Nielander was "extremely agitated and yelling," *id*. at 1169, and that one witness's written statement to the officer indicated that she "did feel somewhat threatened," *id*.  In this context, the Tenth Circuit concluded that "we cannot say that a reasonable officer . . . could not conclude that Mr. Nielander had made a true threat."  *Id*.  Here, by contrast, Plaintiff immediately recanted and disavowed his "threat" in no uncertain terms, both to the person to whom it was made and to the officer who arrested him, and Ms. Brown admitted she was "not scared."  Doc. 12 at ¶¶ 20, 21; 25; *see Magleby*, 241 F.3d at 1311 (the "reaction of the recipient of the alleged threat" is relevant in determining whether a reasonable person would find that a threat existed); *Watts v. United States*, 394 U.S. 705, 708 (1969) (considering "the reaction of the listeners" in determining what constitutes a true threat).

In addition, since Plaintiff's arrest in July of 2013, the Tenth Circuit has interpreted *Black* "as establishing that a defendant can be constitutionally convicted of making a true threat only if the defendant *intended* the recipient of the threat to feel threatened."  *United States v. Heineman*, 767 F.3d 970, 978 (10th Cir. 2014) (emphasis in original).  To the extent that this intent requirement derives from the Supreme Court's decision in *Black* and was thus "clearly established" at the time of Plaintiff's July 2013 arrest, it was not satisfied here.  *See Heineman*, 767 F.3d at 975-82; *Black*, 538 U.S. at 359-60.  There was no evidence that Plaintiff intended

Ms. Brown or her driver to feel threatened, and in fact, Plaintiff expressly disavowed any such intention, both to Ms. Brown and to Officer Balltrip before his arrest.  Doc. 12 at ¶¶ 20, 25. Accordingly, I find that Defendants are not entitled to qualified immunity on Plaintiff's second claim.

C.    Fourth Amendment violation for false arrest (imprisonment) against Officers Balltrip and Commander Sanchez

Plaintiff's third claim is for a Fourth Amendment violation based on his warrantless arrest inside his home on July 17, 2013.  Doc. 12 at ¶¶ 50-56.

"In *Payton v. New York*, the Supreme Court held that, absent exigent circumstances, police officers may not enter an individual's home without consent to make a warrantless routine felony arrest even if probable cause to arrest the individual exists."  *United States v. Reeves*, 524 F.3d 1161, 1165 (10th Cir. 2008) (citing *Payton v. New York*, 445 U.S. 573, 576 (1980)).  "[I]t is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home."  *United States v. Maez*, 872 F.2d 1444, 1451 (10th Cir. 1989).

The facts of Plaintiff's arrest, construed in the light most favorable to him, are as follows. On July 17, 2013, at 10:30 a.m., after speaking with Plaintiff over the phone, Defendant Balltrip and Officer Bakovich, armed and in uniform, took two squad cars to Plaintiff's residence, entered Plaintiff's property without his consent, and banged on his front door.  Doc. 1 at ¶¶ 28-29.  Plaintiff answered the door, barefoot and in his pajamas.  *Id*. at ¶ 29.  When ordered to step outside, Plaintiff complained that he was barefoot and had a knee injury, *id*. at ¶ 30, but Officer Balltrip displayed his firearm and told Plaintiff that he "had no choice."  *Id*.  Plaintiff was then arrested, put in handcuffs, and put in Officer Balltrip's squad car.  *Id*.

Under these circumstances, Plaintiff was clearly arrested in violation of the Fourth Amendment, and Defendants do not seriously argue otherwise.  *See* Doc. 10 at 5-7.  It is

undisputed that Defendants did not have a warrant for Plaintiff's arrest, and there are no allegations that any exigent circumstances were present.  Even if there were, the minor nature of Plaintiff's offenses counsels against excusing the warrant requirement.  *See Mascorro v. Billings*, 656 F.3d 1198, 1206 (10th Cir. 2011) ("[A]pplication of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is a probable cause to believe that only a minor offense . . . has been committed." (citing *Welsh v. Wisconsin*, 466 U.S. 740, 749 n.11 (1984)).  And although it is not necessary to my conclusion, as discussed above, I find a reasonable officer could not have concluded that there was probable cause to believe even the minor offenses alleged had been committed.  Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's third claim.

D.  <u>First and Fourth Amendment violation for unconstitutional custom or practice against Commander Sanchez and Town of Johnstown</u>

Plaintiff's next two claims are against the Town of Johnstown and Defendant Commander Sanchez.  Plaintiff claims the Town of Johnstown had "long-standing, department-wide customs, policies, and actual practices of failure to discipline members of its law enforcement who engage is unconstitutional behaviors" and Commander Sanchez helped to implement and maintain these policies and practices.  Doc. 12 at ¶¶ 57-87.

a.  Town of Johnston

"A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).  In particular, the plaintiff must sufficiently allege the following: (1) the existence of a continuing, persistent and

widespread practice of unconstitutional misconduct by the municipality's employees; (2)

deliberate indifference to or tacit approval of such misconduct by the municipality's

policymaking officials after notice to the officials of that particular misconduct; and (3) that the

plaintiff was injured by virtue of the unconstitutional acts pursuant to the custom and that the

custom was the moving force behind the unconstitutional acts. *Salazar v. Castillo*, No. 12-CV-

01481-JLK, 2013 WL 69154, at *5-6 (D. Colo. Jan. 7, 2013) (citing *Gates v. Unified Sch. Dist.

No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)).

Plaintiff alleges that the Town of Johnston had an "unconstitutional policy, custom and/or

practice of arresting individuals in their homes without first obtaining an arrest warrant or

establishing any exceptions to the arrest warrant requirement." Doc. 12 at ¶ 58.  Other than

repeating this allegation, *see, e.g.*, *id*. at ¶¶ 63-65, and alleging that the arrest of Plaintiff was

made pursuant to the this "policy, custom, and/or practice," *id*. at ¶¶ 65-67, Plaintiff does not

provide any further factual specificity regarding the alleged policies, or any other examples of

the alleged policy or practice in action. *See generally id*. at ¶¶ 57-71.  I conclude that Plaintiff

has failed to state a claim for municipal liability arising out of Plaintiff's arrest. *See Salazar*,

2013 WL 69154 at *6 ("Plaintiff cannot state a plausible claim of municipal liability by

identifying a single incident of alleged violations and then, without any further factual

substantiation, contending that such actions were consistent with and caused by a municipal

policy, procedure, or failure to train.").

    b.   Commander Sanchez

In order to establish so-called "supervisory liability" on the part of Commander Sanchez,

Plaintiff must show an "affirmative link" between Sanchez and the alleged constitutional

violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013);

*see Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).  This showing has three elements:  (1) personal involvement; (2) causation, and (3) state of mind.  *Schneider*, 717 F.3d at 767.

Plaintiff's allegations concerning Commander Sanchez are that he and Officer Balltrip discussed Plaintiff's phone call to the Greeley Tribune and "agreed between themselves that there was probable cause" for Plaintiff's arrest and that Commander Sanchez "authorized Officer Balltrip to act on his desire to effect a warrantless arrest of [Plaintiff] at his home."  Doc. 12 at ¶¶ 23, 26.  Because Plaintiff has alleged that Commander Sanchez participated directly in the probable cause determination and directly authorized the warrantless arrest of Plaintiff inside his home, I find that the first two elements of supervisory liability are satisfied.  *See Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) ("direct participation" is sufficient to satisfy the personal involvement element); *Dodds*, 614 F.3d at 1195-96 (causation element requires allegations that "defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights").  Given my conclusion that the law regarding the alleged constitutional violations was clearly established, and Plaintiff's allegations that Commander Sanchez directly participated in the probable cause determination and authorized the warrantless arrest, I conclude that Plaintiff has sufficiently alleged the state of mind element.  *See Schneider*, 717 F.3d at 769 (deliberate indifference state of mind demonstrated where defendant "knowingly created a substantial risk of constitutional injury").

## Conclusion

For the reasons given above, Defendants' Motion (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's First,

Second, and Third Claims for Relief, **DENIED** as to Defendant Sanchez as to Plaintiff's Fourth

and Fifth claims for relief, and **GRANTED** as to the Town of Johnston on Plaintiff's Fourth and

Fifth Claims for Relief.  Defendants' Motion to Stay (Doc. 11) is **DENIED AS MOOT**.  The

Town of Johnston is **DISMISSED** as a defendant in this action.


    Dated:  March 8, 2016                         ***s/ John L. Kane***           
                                                  Senior U.S. District Judge